UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rick Glorvigen as trustee for the next of kin
of decedent James Kosak,

Civil No. 05-2137 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Cirrus Design Corporation

Defendants,

and

Thomas M. Gartland as trustee for the next
of kin of decedent Gary R. Prokop,

Civil No. 05-2138 (PAM/RLE)

Plaintiff,

v.

Cirrus Design Corporation,

Defendant.

This matter is before the Court on Motions to Remand by Plaintiff Rick Glorvigen and Plaintiff Thomas M. Gartland.  For the reasons that follow, the Court grants both Motions.

**BACKGROUND**

On January 18, 2003, a Cirrus SR-22 aircraft crashed into terrain near Hill City, Minnesota.  The pilot and owner of the aircraft, Gary Prokop, and the sole passenger, James Kosak, both died from injuries sustained in the crash.  Defendant Cirrus Design Corporation designed, manufactured, and sold the aircraft to Gary Prokop on December 9, 2002.

The instant actions arose from the crash. Both Glorvigen and Gartland initially commenced the actions in Itasca County District Court. The essence of the Complaints is that Cirrus failed to provide Prokop with adequate ground and flight training on SR-22 operations. In particular, the Complaints contend that Cirrus omitted instruction on  instrument flight rules ("IFR") operations, which would have provided Prokop with critical information and training on necessary actions to follow should he encounter marginal weather conditions. The Glorvigen Complaint alleges that Cirrus breached its duty to provide adequate pilot training and an implied warranty of merchantability. It also includes a negligent piloting claim against Prokop. The Gartland Complaint asserts claims for negligent training, strict products liability, and breach of warranty against Cirrus. Neither Complaint refers to any federal law.

Nonetheless, Cirrus removed both actions to this Court based on federal-question jurisdiction. Relying on the recent Supreme Court case, Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 125 S. Ct. 2363 (2005), Cirrus argues that the state-law claims implicate significant federal issues. Alternatively, it contends that the Federal Aviation Act ("FAA") completely preempts all state-law claims based on the failure to provide adequate training to a pilot.

Both Glorvigen and Gartland timely moved to remand. They contend that the Complaints do not raise any significant federal question. In addition, they maintain that the complete preemption rule does not apply because the federal regulation of aviation does not wholly preempt their state-law claims.

**DISCUSSION**

2

## A.      Standard of Review

A complaint may not be removed from state court unless it could originally have been filed in federal court.   28 U.S.C. § 1441; <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).    Removal based on federal-question jurisdiction is usually governed by the "well-pleaded complaint" rule.   <u>Krispin v. May Dep't Stores Co.</u>, 218 F.3d 919, 922 (8th Cir. 2000) (citation omitted).    This rule provides that federal jurisdiction may be invoked "only where a federal question is presented on the face of the plaintiff's properly pleaded complaint."    <u>Id.</u> The rule "makes the plaintiff the master of the claim," allowing the plaintiff to "avoid federal jurisdiction by exclusive reliance on state law."    <u>Caterpillar, Inc.</u>, 482 U.S. at 392.    Thus, when determining whether a claim raises a federal question, the Court examines the contents of the complaint and ignores any potential defenses.    <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 6 (2003); <u>Krispin</u>, 218 F.3d at 922 ("federal jurisdiction exists only where a federal question is presented on the face of the plaintiff's pleaded complaint").    The Court must construe the removal statute narrowly and resolve all doubts as to the propriety of federal jurisdiction in favor of remand.    <u>Transit Cas. Co. v. Certain Underwriters at Lloyd's of London</u>, 119 F.3d 619, 625 (8th Cir. 1997) (citation omitted).

**B.    Federal Issue Embedded in a State-Law Claim**

Cirrus contends that these cases arise under federal law because they raise significant federal issues.  Glorvigen and Gartland disagree, relying on the fact that neither the FAA nor its implementing regulations creates a federal cause of action.

The "mere presence a federal issue in a state cause of action does not automatically confer federal question jurisdiction." Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986).  On the other hand, the existence of a federal cause of action is not necessary to confer federal-question jurisdiction.  Grable, 125 S. Ct. at 2368-70.  Rather, the relevant question is whether a state-law claim raises a federal issue, "actually disputed and substantial," which the Court may address "without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 2368.

Because Grable clarified Merrell Dow, a comparison of two cases is instructive. Merrell Dow involved allegations that a drug was misbranded in violation of federal law, and that the violation both created a rebuttable presumption of negligence and directly caused the injuries at issue.  The Supreme Court held that such allegations did not invoke federal-question jurisdiction.  Merrell Dow Pharms., Inc., 478 U.S. at 805-06.  Rather, the Supreme Court found that the allegations represented only "the presence of a federal issue in a state-created cause of action" that was "insufficiently 'substantial' to confer federal-question jurisdiction." Id. at 810.

In contrast, Grable involved a federal issue that was outcome determinative.  In that case, the Internal Revenue Service ("IRS") seized real property owned by Grable to satisfy a

federal tax delinquency, and gave him notice by certified mail before selling the property. Grable, 125 S. Ct. at 2366. Thereafter, Grable brought a quiet title action in state court, claiming that the sale of the property was invalid because 26 U.S.C. § 6335 required the IRS to give him notice of the sale by personal service, not certified mail. Id. The subsequent property owner removed the case to federal court as presenting a federal question because the title claim depended on an interpretation of federal tax law. Id.

Recognizing that "in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues," the Supreme Court relied on "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." Id. at 2367 (citations omitted). The Supreme Court found the national interest in providing a federal forum for federal tax litigation sufficiently substantial to support the exercise of federal-question jurisdiction over the disputed issue. Id. at 2368. Notably, the Supreme Court emphasized that the case turned on the federal issue and that the interpretation of the tax code is quintessentially federal. Id. at 2368-71.

In these cases, the applicability of Federal Aviation Regulations ("FARs") will certainly be an issue. However, to confer federal-question jurisdiction over the state-law claims, the claims must involve "not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id. at 2367 (citations omitted). Thus, the federal issue must be dispositive and "at the heart

5

of the state-law . . . claim." <u>Id.</u> at 2371.  Although the instant cases implicate FARs, an alleged violation of the regulations will not necessarily resolve the state-law claims.   Moreover, while the parties may disagree on the applicability of the FARs, the parties do not contest the meaning of any regulation and point to no federal law that is in dispute.   Finally, Congress failed to provide a federal cause of action and failed to preempt state remedies when enacting the FAA — strongly indicating that Congress did not intend to create a substantial federal question over cases implicating the FAA and FARs.   Accordingly, the Court finds that the instant cases do not raise a federal issue significant enough to confer federal-question jurisdiction.

## C.    Complete Preemption

Cirrus also argues that removal is proper because the FAA and the FARs completely preempt state-law claims based on a standard of care for pilot training and the operation of an aircraft.   Glorvigen and Gartland disagree and submit that Congress did not intend to preempt state law in this area.

An exception to the well-pleaded complaint rule is the doctrine of complete preemption, which applies when federal law dominates a particular area, causing the preemptive force of a federal statute to be so extraordinary "that it converts an ordinary state common law complaint into one stating a federal claim." <u>Estes v. Fed. Express Corp.</u>, 417 F.3d 870, 872-73 (8th Cir. 2005) (citations omitted).   "Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." <u>Caterpillar, Inc.</u>, 482 U.S. at 393.   The

determinative question is whether Congress intended for a federal statute to preempt a field of law so completely that state-law claims convert into federal causes of action.  Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 544 (8th Cir. 1996); see also Gore v. Trans World Airlines, 210 F.3d 944, 949 (8th Cir. 2000) ("Whether federal law preempts a state-law cause of action is a question of congressional intent.") (citation omitted).[1]

    1.   Legislative History

Cirrus maintains that Congress intended for the federal government to be the exclusive regulator and controller of the aviation industry.   Indeed, legislative history of the FAA indicates that the federal government is the exclusive regulator of aviation:

> Aviation is unique among transportation industries in its relation to the federal government — it is the only one whose operations are conducted almost wholly within federal jurisdiction, and are subject to little or no regulation by States or local authorities.   Thus, the federal government bears virtually complete responsibility for the promotion and supervision of this industry in the public interest.

Abdullah v. Am. Airlines, Inc., 181 F.3d 363, 368 (3d Cir. 1999) (quoting S. Rep. No. 1811); see also H.R. Rep. No. 2360-61 (stating that the FAA has "full responsibility and authority" for the promulgation and enforcement of safety regulations).   The federal government has carried out its mandate with the promulgation of FARs, a comprehensive system of rules and regulations that exclusively set the standard of care and safety in aviation.   These regulations

---

[1] Cirrus relies on Gore, which involved an airline employee who brought state-law claims against his employer, to imply that the Eighth Circuit endorsed the concept of complete preemption in the aviation industry.   This is incorrect.   Gore held that the Railway Labor Act — not the FAA — preempted state-law claims.   The Eighth Circuit reasoned that the resolution of the state-law claims required an analysis of rights and duties under a collective bargaining agreement.   Complete preemption applies to such claims.   Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 256-59 (1994),

include detailed requirements for pilot training and the safe operation of aircraft, as well as standards for pilot certification.  <u>See</u> 14 C.F.R. Pts.61 & 91.

Nonetheless, the fact that Congress has established a broad regulatory scheme does not indicate that it intended to preempt all state-law claims within a particular field.  <u>See</u> <u>Chapman v. Lab One</u>, 390 F.3d 620, 630 (8th Cir. 2004) (a "comprehensive regulatory scheme" is insufficient to find complete preemption); <u>see also</u> <u>Agre v. Rain & Hail LLC</u>, 196 F. Supp. 2d 905, 910-11 (D. Minn. 2002) (Rosenbaum, C. J.) (mere fact that Congress established an ordered regulatory scheme is insufficient to preempt all state-law claims); <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1313 (11th Cir. 2001) (federal regulations standardizing certain aspects of telephone industry are insufficient to create complete preemption); <u>Virgil v. Reorganized M.W. Co., Inc.</u>, 156 F. Supp. 2d 624, 631 (S.D. Miss. 2001) ("Not even Congressional intent to impose a uniform legal standard will necessarily imply its intent to establish a complete preemption and hence federal removal jurisdiction.").  Moreover, legislative history is devoid of evidence that Congress intended to create a cause of action for third parties injured by a violation of federal aviation safety standards.  To the contrary, while the legislative history of the FAA is permeated with references to aviation safety and the need for national and uniform regulations to prevent aviation accidents, the focus of the FARs is on the regulation of pilots and aircraft to prevent future accidents — not to provide a remedial mechanism for individuals injured by a violation of aviation safety standards.

      2.     <u>Case law</u>

Cirrus also points to several cases that find congressional intent to completely preempt the area of aviation regulation. One example is <u>Northwest Airlines v. Gomez-Bethke</u>, No. 4-83-773, 1984 WL 1040 (D. Minn. Apr. 1, 1984) (Murphy, J.). In that case, Northwest Airlines sought relief in federal court to enjoin state regulation of its employee benefit policies regarding chemical dependency, arguing that federal statutes and regulations preempted the state statute that would have required the airline to permit chemically-dependent pilots to return to duty. <u>Id.</u> at *3. Although the court had independent grounds for federal-question jurisdiction and therefore did not address whether removal of a state-law claim was proper, the court remarked:

> The comprehensive nature of the federal regulatory scheme governing the issuance of airman certificates clearly indicates an intent on the part of Congress to occupy the field of pilot regulation. [States] are therefore powerless to regulate in this field, even if their regulation does not conflict with the federal law. As Professor Tribe explains, "if Congress has validly decided to 'occupy the field' for the federal government, state regulations will be invalidated no matter how well they comport with substantive federal policies."

<u>Id.</u> at 11.

In a similar case, <u>French v. Pan Am Express, Inc.</u>, 869 F.2d 1 (1st Cir. 1989), an airline pilot commenced an action under a state statute to enjoin his employer from requiring him to submit to drug tests. Finding that the "intricate web of statutory provisions affords no room for the imposition of state law criteria vis-à-vis pilot suitability," the First Circuit Court of Appeals explained:

> We infer from the Federal Aviation Act an unmistakably clear intent to occupy the field of pilot regulation related to air safety, to the exclusion of state law. In our judgment, such an intent is implicit in the pervasiveness of relevant

federal regulation, the dominance of the federal interest, and the legislative goal of establishing a single, uniform system of control over air safety.

Id. at 4, 6-7.    The Court of Appeals therefore concluded that the "comprehensive legal scheme" regulating pilot qualifications implicitly preempted the state statute.

Cirrus also relies on Abdullah v. American Airlines, Inc., 181 F.3d 363 (3d Cir. 1999), which is more similar factually to the cases at hand.   In Abdullah, the Third Circuit held that federal regulations supersede state law with respect to the standard of care in the field of aviation safety, thereby preempting state-law claims.   Id. at 366-72.   Based on an extensive analysis of the legislative history and judicial interpretation of the FAA, the Third Circuit concluded that Congress intended to federally regulate aviation safety:

> Our finding of implied field preemption here is based on our conclusion that the FAA and relevant federal regulations establish complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, jurisdictions.   While some courts have found federal law to preempt discrete aspects of air safety, we hold that federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation.

Id. at 367.    Nonetheless, the Third Circuit concluded that state tort remedies remain for violation of the federally established standards of care.   Id. at 375 ("Federal preemption of the standards of care can coexist with state . . . tort remedies.").

None of these cases are apposite because they discuss the defense of federal preemption — and not whether removal is proper under the doctrine of complete preemption. The doctrine of complete preemption differs significantly from the federal preemption defense.   Gaming Corp. of Am., 88 F.3d at 543-44.   Complete preemption "has jurisdictional

consequences that distinguish it from preemption asserted only as a defense. The defense of preemption can prevent a claim from proceeding, but does not convert a state claim into a federal claim." Id. at 543. Thus, the presence of the federal preemption defense does not make a case removable. Hurt v. Dow Chem. Co., 963 F.2d 1142, 1144 (8th Cir. 1992); see also Beneficial Nat'l Bank, 539 U.S. at 6 (defense that relies on the preemptive effect of a federal statute does not provide a basis for removal). "A case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc., 482 U.S. at 392 (emphasis in original). Although these decisions indicate that federal law will apply to state claims involving the standard of care in aviation safety, they do not hold that federal law completely displaces state-law claims.[2]

For the doctrine of complete preemption to apply, Congress must have intended not only that the federal law preempts state law, but also that the federal law authorizes removal of actions seeking relief only under the state law. Beneficial Nat'l Bank, 539 U.S. at 6-7. To

---

[2] As Cirrus points out, several courts have relied on Abdullah. See, e.g., Greene v. B.F. Goodrich Avionics Sys., Inc., 409 F.3d 784, 794-95 (6th Cir. 2005) (federal law establishes the standards of care in the field of aviation safety and therefore preempts the field from state regulation); Curtin v. Port Authority of N.Y. & N.J., 183 F. Supp. 2d 664 (S.D.N.Y. 2002). Given its procedural posture, Curtin is most on point with this case. In that case, a passenger sued an airline in state court alleging negligence in an emergency evacuation. The airline removed the action to federal court based on federal-question jurisdiction. Relying on Abdullah and French, the Curtin court denied the plaintiff's motion to remand and held that the standard of care is a matter of federal law. Id. at 671. However, the Curtin court did not recognize that Adbullah and French involved the preemption defense and not the doctrine of complete preemption. This Court therefore finds Curtin analytically flawed and unpersuasive.

have the requisite preemptive force to provide removal jurisdiction, a federal statute must provide both substantive and remedial provisions that supersede state law.  Id. at 8 (federal statute must provide "the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action"); Chapman, 390 F.3d at 629 ("the absence of [a] cause of action militates against a finding of complete preemption") (citation omitted);  Hurt, 963 F.2d at 1144-45 (the provision of a "good federal preemption defense" does not justify removal).  Thus, a federal substantive provision alone —  although sufficient to provide a federal preemption defense — is insufficient to invoke the complete preemption doctrine.  Rather, for the complete preemption doctrine to apply, the federal statute must also provide a remedial provision and clearly indicate that that provision is the exclusive remedy for the alleged harm.

The FAA does not provide an express federal remedy for a violation of standard of care. Thus, complete preemption does not apply.  Because the FAA does not completely preempt the claims at issue, it cannot provide the basis for removal.

**CONCLUSION**

Remand is appropriate because the Complaints do not raise a federal issue that is "actually disputed and substantial" and because the doctrine of complete preemption is inapplicable.  Accordingly, **IT IS HEREBY ORDERED** that:

1.    Plaintiff Rick Glorvigen's Motion to Remand (Clerk Doc. No. 6 in Civ. No. 05-2137) is **GRANTED**;

2.    Plaintiff Thomas M. Gartland's Motion to Remand (Clerk Doc. No. 6 in Civ. No. 05-2138) is **GRANTED**; and

3.    These cases are **REMANDED** to Itasca County District Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 16, 2006

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge